2000 OK CIV APP 39

**Revi JENNINGS, Petitioner,**

v.

**EXPRESS TEMPORARY SERVICES, National Union Fire Insurance, and Workers' Compensation Court, Respondents.**

No. 93543.

Court of Civil Appeals of Oklahoma, Division No. 4.

Feb. 8, 2000.

Walt Brune, Fred L. Boettcher, Boettcher Law Offices, Inc., Ponca City, Oklahoma, for Petitioner.

Michael Mancillas, Mancillas & Avey, Oklahoma City, Oklahoma, for Respondents.

REIF, Judge:

¶ 1 This case concerns a credit of $2,558.14 in temporary total disability paid to Claimant toward $2,705.17 in permanent partial disability awarded Claimant. The three-judge panel gave Employer and Insurance Carrier credit for temporary total disability that was paid to Claimant from October 29, 1997, to February 19, 1998, and from June 30, 1998, to July 8, 1998.[1] At trial, Employer and Insurance Carrier had asked the court to credit a longer period of TTD beginning October 2, 1997, and ending July 8, 1998. Their counsel argued that the credit was warranted because Claimant had "no treatment from October 2, 1997, through July 8, 1998."

¶ 2 The primary basis for the request to credit the TTD period of October 1997 to February 1998 was a report from the court-appointed Independent Medical Examiner dated January 15, 1998. In this report, the IME indicated that he prescribed physical therapy for Claimant on October 2, 1997. This report also stated that the IME issued a new prescription to Claimant on October 29, 1997, because Claimant lost the initial prescription. The report further recounts the issuance of another renewal prescription on December 8, 1997, at Claimant's request. The IME recorded that Claimant had not been able to authorize her initial physical therapy. The report went on to relate that Claimant "had made [therapy] appointments several times [but] had failed to keep any of her [therapy] appointments." The IME concluded that Claimant was "noncompliant with any attempt at treatment ... and should be discharged from care and released to her regular activities." About a month later, however, on February 19, 1998, Claimant's medical expert reconfirmed that she had been "temporarily and totally disabled" since the injury.

¶ 3 The trial court gave a credit for the period of October 2, 1997, to February 19, 1998. On appeal to the three-judge panel, the credit was modified to extend from October 29, 1997, to February 19, 1998. This credit had the effect of disallowing Claimant temporary total disability for the period in question.

¶ 4 Claimant's primary proposition on review is that the workers' compensation court erred as a matter of law in giving the credit.[2] The gist of Claimant's position is that the

---

1. Claimant does not contest the credit for June 30, 1998, to July 8, 1998.

2. Claimant also argued that the credit is contrary to case law that allows temporary total disability when a claimant refuses treatment due to pregnancy. Claimant further contended that Employer and Insurance Carrier could not receive a credit without showing that Employer had offered her the type of "light duty" she had been authorized to perform and that Claimant refused such light duty. Given the disposition of Claimant's first proposition of error, it is unnecessary to address these propositions.

IME report of January 15, 1998, does not constitute competent evidence to support the credit when considered with her testimony about her efforts to obtain physical therapy. She asserts that her problems in scheduling therapy did not involve any noncompliance with treatment that should disqualify her from temporary total disability.

¶5 Claimant testified that she tried to get the prescribed physical therapy through the Stillwater Wellness Center. She indicated that her first attempt was unsuccessful because "they had to have an approval for payment . . . and then—so I had to wait for [insurance authorization]." It appears that this first attempt to obtain therapy was after the October 29 prescription was issued in view of the fact that Claimant lost the initial prescription of October 2, 1997. Claimant further recounted that sometime "in November [1997] it was authorized, but by then the—the prescription [of October 29] was past 30 days."

¶6 At this point, Claimant sought and received the renewal prescription of December 8. In issuing this prescription, the IME recorded Claimant's problem in obtaining authorization. Claimant related that she eventually received an appointment for December 23, 1997, but "was ill with my pregnancy and was unable to go." She stated that when she "tried to reschedule the [December 23] appointment, and they wanted a new prescription because . . . the prescription I was giving them [i.e., the December 8 prescription] was 30 days old." Claimant related that she called in January 1998 to get another renewal.

¶7 Claimant further testified that she was not informed by the IME that she was being released from treatment to work, but was told that the IME would reevaluate her after her pregnancy was concluded. Claimant testified that she advised her attorney of her problems in obtaining the physical therapy

and the IME's postponement of a reevaluation. Counsel thereafter arranged for Claimant's evaluation on February 19, 1998, to clarify her status.

¶8 It is reasonably clear that the trial court and three-judge panel agreed with the IME's conclusion that Claimant had been noncompliant with prescribed medical treatment. It is also reasonably clear that they believed such noncompliance disqualified Claimant from receiving temporary total disability for the period of her noncompliance and until she could offer proof of continued temporary total disability. However, neither the trial court nor three-judge panel made specific findings to support the disallowance of temporary total disability or indicated the legal authority relied upon to do so.

¶9 We observe that the IME did not reexamine or reevaluate Claimant before "releasing" her. Clearly, his decision to release Claimant was based on her alleged "noncompliance" and not a medical evaluation of her physical condition. We make this observation, because it does not appear that either the IME or workers' compensation court were invoking the authority to terminate TTD under 85 O.S. Supp.1999 § 17(D)(7) and Rule 15(B), 85 O.S. Supp.1999, ch. 4, app.[3] It appears that the credit was made pursuant to Rule 15(C), 85 O.S. Supp.1999, ch. 4, app. We note that Employer and Insurance Carrier filed a motion to terminate as provided in Rule 15(C)(1) and Claimant responded as provided in Rule 15(C)(2) and (3).

¶10 We hold that Rule 15(C) must be construed in light of established case law for termination of temporary total disability. *Moran v. Oklahoma Engineering & Machine & Boiler Co.*, 1923 OK 224, 89 Okla. 185, 214 P. 913, is one of the earliest cases to consider a claimant's disqualification to receive temporary total disability for refusal of or noncompliance with medical treatment. *Moran*

---

**3.** Section 17(D)(7) and the initial proviso in Rule 15(B) both state:

If the independent medical examiner determines that the employee is capable of returning to work and the claimant elects not to do so, temporary total disability and medical benefits shall cease, unless otherwise ordered by the Court.

The sub-provisions of Rule 15(B) specify the procedure to be followed in such cases. One procedural requirement of Rule 15(B) missing in the instant case is the use of a Form 5 Release by the IME.

observed that "the statutory obligation of the employer to pay compensation during the continuance of the disability is subject to the implied condition that the workman shall avail himself of such reasonable remedial measures as are within his power." *Id.* at 915. *Moran* further observes that disqualification from benefits "under this rule [occurs] where the workman *unreasonably refuses* to undergo a minor operation, simple, safe, and reasonably certain to effect a cure." *Id.* (emphasis added).

¶ 11 The modern statement of this rule is found in the second syllabus of *Macklanburg–Duncan v. Wimmer*, 1955 OK 24, 280 P.2d 1001. The second syllabus states:

An award of compensation to an employee who has sustained an accidental injury compensable under Workmen's Compensation Law may not be denied nor diminished on the ground of refusal to accept medical treatment tendered by the employer in the absence of a showing that such refusal was arbitrary or unreasonable.

¶ 12 *Moran* further provides that "[t]he burden of proof [is] upon the employer to establish all facts which would be necessary to warrant . . . discontinuing compensation." 214 P. at 915 (citation omitted). In addition, *Moran* states:

Whether or not the refusal to submit to operation and treatment was unreasonable was a fact which the employer must have established and the [workers' compensation tribunal] must have found . . . and they must have found further that the treatment would have relieved the trouble and thus benefited the employer.

*Id.*

■ ¶ 13 As noted, neither the trial judge nor three-judge panel made any specific findings to support the disallowance of temporary total disability. In addition, the only evidence on the issue of Claimant's "noncompliance" with prescribed medical treatment does not establish any arbitrary or unreasonable refusal to avail herself of the therapy.

¶ 14 The three-judge panel *excused* Claimant's failure to obtain therapy from October 2, 1997, (the date it was initially prescribed) to October 29, 1997, because Claimant lost the prescription. After receiving another prescription that was mailed October 29, 1997, Claimant had to wait for payment authorization from Insurance Carrier to schedule therapy. By the time such authorization was received, the October 29 prescription expired before Claimant could be scheduled for treatment. Upon receiving the new therapy prescription mailed on December 8, 1997, Claimant made an appointment for December 23, 1997. However, she could not keep this appointment due to a pregnancy-related illness. Missing this appointment for that reason could not be a basis to disqualify her from temporary total disability under *Macklanburg–Duncan*. Claimant was unable to reschedule the December 23 appointment before the December 8 prescription expired. When Claimant requested another prescription to replace the expired December 8 prescription, the IME did not issue one.

¶ 15 The note in the IME's January 15 report that Claimant "had made appointments several times [but] had failed to keep any of her appointments" does not reveal how many appointments Claimant made or what dates they were made for. It does not reveal whether there were good reasons, such as lack of payment authorization or pregnancy-related illness, for missing any of the "several" appointments. The report does attribute the information that Claimant made and missed several appointments to a spokesperson for the Wellness Center; however, the statement that Claimant was a "no-show"—implying that the missed appointments were unexcused—was *the subjective personal interpretation* of the IME.

■ ¶ 16 In a few words, Employer and Insurance Carrier did not establish by competent evidence that Claimant's failure to obtain the prescribed physical therapy was due to an arbitrary or unreasonable refusal on her part. In addition to failing to meet their burden of proof on the issue of refusal, there is no evidence to show that "the treatment would have relieved the trouble and thus benefited employer." None of the prescriptions for Claimant's physical therapy were introduced and the record fails to oth-

erwise disclose the exact nature of the physical therapy that Claimant missed.

¶17 Like the court in *Moran,* 214 P. at 915, this court holds that "[n]either the evidence taken nor the findings of fact ... warrant the assumption that the continuing [temporary total] disability of the claimant was the result, not of [the] injury, but of [an] unreasonable refusal to submit to a simple [plan of treatment]." In such cases, "the order appealed from [will be] reversed, and the cause remanded, with directions to set aside the order discontinuing [or disallowing] compensation."

¶18 The credit of temporary total disability for the period of October 29, 1997, to February 19, 1998, ordered by the three-judge panel is vacated. This case is remanded to the three-judge panel with directions to award Claimant the full amount of her adjudicated permanent partial disability, less the uncontested credit for temporary total disability paid to Claimant from June 30, 1998, to July 8, 1998.

¶19 VACATED AND REMANDED WITH DIRECTIONS.

¶20 GOODMAN, C.J., and STUBBLEFIELD, J., concur.